In re UNITED STATES of America, Petitioner.

No. 520, Docket 93–3074.

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1993.

Decided Nov. 23, 1993.

Andrew Frey, Washington, DC (Mayer, Brown & Platt, of counsel), for respondent.

Cheryl L. Pollak, Asst. U.S. Atty., E.D.N.Y. (Zachary W. Carter, U.S. Atty., E.D.N.Y., Peter A. Norling, Asst. U.S. Atty., of counsel), for petitioner.

Before: FEINBERG, CARDAMONE and ALTIMARI, Circuit Judges.

FEINBERG, Circuit Judge:

The United States petitions under the All Writs Act, 28 U.S.C. § 1651, and Rule 21 of the Federal Rules of Appellate Procedure for a writ of mandamus to the United States District Court for the Eastern District of New York, Edward R. Korman, J. The petition requests a determination of the authority of a district court to delegate to a federal magistrate judge the power to review applications by law enforcement officials for orders authorizing electronic eavesdropping pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521 (Title III). The petition requests, in the alternative, an order directing respondent Judge Korman to review such applications personally. For the reasons set forth below, we grant mandamus and order respondent Judge Korman not to delegate review of Title III applications to federal magistrate judges and to review personally an application now pending.

## I. Background

In February 1992, respondent Judge Korman was serving in the Miscellaneous Part of the district court, where he was responsible for the review of applications for Title III orders. By an opinion and order dated February 14, 1992, respondent announced his intention to refer all such applications to United States magistrate judges. See *In re United States Attorney*, 784 F.Supp. 1019, 1028 (E.D.N.Y.1992). At the request of the United States, however, Judge Korman stayed implementation of his order until October 10, 1992 [1] and signed the then pending Title III application of the United States Attorney for the Eastern District of New York. The United States then petitioned this court for mandamus review of Judge Korman's order. This court denied the petition in an order dated March 23, 1993. Upon the United States' motion for clarification, the order was modified on June 14, 1993 to state that the petition was denied because no

---

1. This was the next date on which respondent    expected to serve in the Miscellaneous Part.

application had been referred to a magistrate.

On June 30, 1993, Judge Korman referred another application by the United States Attorney to a magistrate judge. The United States now seeks mandamus review of this order. This court accepted briefs from the parties and heard oral argument.[2]

## II. Availability of Mandamus

This court's order of March 23, 1993, as modified June 14, 1993, denied petitioner's earlier mandamus petition because there was no wiretap application then pending before a magistrate judge. Because such an order is now pending, the issue has become ripe for review.

■ Mandamus is an extraordinary remedy that this court does not grant lightly:

the petitioner must show (1) the presence of a novel and significant question of law; (2) the inadequacy of other available remedies; and (3) the presence of a legal issue whose resolution will aid in the administration of justice.

*In re United States*, 903 F.2d 88, 89 (2d Cir.1990) (citing *In re Von Bulow*, 828 F.2d 94, 97–100 (2d Cir.1987)). We find that the petition by the United States meets these stringent criteria.

■ First, the case presents a novel and significant issue. Respondent appears to be the only judge in this circuit, if not in the nation, to delegate the review of Title III orders to a federal magistrate judge. As for significance, this court has recognized that "the scope of a Magistrate's authority is a significant issue in federal criminal litigation." *In re United States*, 903 F.2d at 89. Moreover, the disposition of applications for wiretapping orders implicates serious issues of privacy under the Fourth Amendment.

■ Second, petitioner has no alternative remedies capable of effectively protecting its substantial interests. Electronic surveillance involves major criminal investigations and requires a significant expenditure of government resources. Petitioner thus has a strong interest in ensuring the admissibility of evidence it gathers by electronic surveillance. Suppression on the ground that surveillance was authorized by an invalid Title III order would result in a significant waste of government resources. Furthermore, the government as *parens patriae* has an interest in avoiding illegal invasions of its citizens' privacy.

Moreover, because of the unusual procedural posture of this proceeding, petitioner has no other adequate remedy. If petitioner is unable to obtain review of the basic legal issue now, presumably either the pending Title III application or another one referred by respondent to a magistrate in the future will be approved by a magistrate and petitioner will proceed with a criminal investigation. If an indictment results, the defendant, of course, would have the right to move to suppress any evidence obtained through the wiretap. Petitioner would then be placed in the impossible situation of either agreeing with defendant that the wiretap was not properly authorized or of taking a legal position that it believes is incorrect. Cf. *In re United States*, 903 F.2d 88.

■ Finally, resolution of this issue will aid in the administration of justice. Mandamus is appropriate "when the appellate court is convinced that resolution of an important, undecided issue will forestall future error in trial courts, eliminate uncertainty and add importantly to the efficient administration of justice." *In re Von Bulow*, 828 F.2d at 99 (quoting *Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 524 (D.C.Cir.1975)). In this case, mandamus will eliminate uncertainty as to the delegation of Title III review, thus avoiding future challenges to wiretapping orders approved by magistrate judges, which may require retrial or the suppression of evidence.

## III. The Merits

We turn now to the merits of the case. Whether district judges may delegate the review of Title III orders to magistrate

---

**2.** Because the issues were fully briefed at the time of the prior application for mandamus, the parties resubmitted and relied upon those briefs.

judges depends ultimately upon the congressional intent expressed in Title III and in the Federal Magistrates [3] Act, Pub.L. No. 90–578, 82 Stat. 1107 (codified as amended at 28 U.S.C. §§ 631–639). In analyzing this issue, however, another statute is highly relevant, as will be seen below.[4]

A. *Relevant statutes* ·

The 90th Congress enacted Title III in June 1968. The statute requires law enforcement officers seeking permission·to intercept wire, oral or electronic communications to apply in writing to a "judge of competent jurisdiction." 18 U.S.C. § 2518(1). The statutory definition of that term includes only "a judge of a United States district court or a United States court of appeals" and "a judge of any court of general criminal jurisdiction of a State," who is authorized by state law to enter wiretapping orders. 18 U.S.C. § 2510(9). Title III contains a number of provisions designed to tightly control the use of this prosecutorial tool and to safeguard the privacy interests of those subjected to a wiretap. See generally *United States v. Giordano,* 416 U.S. 505, 514–23, 94 S.Ct. 1820, 1826–30, 40 L.Ed.2d 341 (1974). For example, an application for a wiretap order must be authorized by the Attorney General or her designees, see 18 U.S.C. § 2516(1), and must be made in writing, under oath, with a statement of the applicant's authority. See 18 U.S.C. § 2518(1)(a). It must also include the identity of the law enforcement officer making the application and provide a complete statement of the facts relied upon. See 18 U.S.C. §§ 2518(1)(a)–(e). Furthermore, the right to intercept is confined to seeking evidence of only certain specified serious offenses. See 18 U.S.C. § 2516(1)(a)–(o). In addition, there are stringent restrictions on the use and disclosure of the evidence obtained. The statute specifies safeguards relating to recording, minimizing and sealing the interceptions, as well as notice requirements to intercepted parties. 18 U.S.C. § 2518(8)(a), (b), (d). Violations of 18 U.S.C. §§ 2510 et seq. are punishable by imprisonment of up to five years and a fine of $10,000. 18 U.S.C. §§ 2511(4)(a), 2512(1).

The Federal Magistrates Act was enacted in October 1968 during the same session in which Congress enacted Title III. The statute replaced the office of United States commissioner with that of federal magistrate and gave the latter all the powers theretofore exercised by the former. See Pub.L. No. 90–578, § 636(a)(1) (codified at 28 U.S.C. § 636(a)(1)). In addition, the statute specifically listed further powers of the newly created magistrates. See id. at §§ 636(a)(2) and (3) (codified as amended at 28 U.S.C. §§ 636(a)(2) and (3)). Commissioners had not been authorized to issue Title III orders, and the list enumerating powers of magistrates did not include any reference to the Title III wiretap approval procedure Congress had just created a few months before. The statute did, however, authorize a district court to assign to magistrates "such additional duties as are not inconsistent with the Constitution and laws of the United States," id. at § 636(b), including but not restricted to "assistance to a district judge in the conduct of pretrial ... proceedings in ... criminal actions." Id. at § 636(b)(2).

In 1976, the Magistrates Act was amended to expand the powers of magistrates. Section 636(b) was changed to read, in relevant part, as follows:

(b)(1) *Notwithstanding any provision of law to the contrary—*

(A) a judge may designate a magistrate to hear and determine *any pretrial matter* pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evi-

---

**3.** In 1990, the name of the office of United States magistrate was changed to "United States magistrate judge." This opinion uses the terms interchangeably.

**4.** The parties have not raised, nor do we address, any constitutional issues involved in the delega-

tion of Article III judges' duties to magistrate judges. We note that the Supreme Court has avoided constitutional issues in this area by construing the Federal Magistrates Act narrowly "in light of its structure and purpose." *Gomez v. United States,* 490 U.S. 858, 864, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989) (citing cases).

dence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

.   .   .   .   .

(3) A magistrate may be assigned *such additional duties as are not inconsistent with the Constitution and laws of the United States.* (emphasis supplied)

Pub.L. No. 94–577, 90 Stat. 2729 (codified as amended at 28 U.S.C. § 636(b)).

Finally, in 1986, Congress passed the Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, 100 Stat. 1848 (codified as amended at 18 U.S.C. §§ 3121–3127) (the Privacy Act). This Act amended Title III by requiring law enforcement officers wishing to employ "pen register" or "trap and trace" monitoring devices [5] to seek permission from a "court of competent jurisdiction." See 18 U.S.C. § 3122(a). Unlike the definition of "judge of competent jurisdiction" in the wiretapping provisions of Title III, the definition of "court of competent jurisdiction" in the Privacy Act specifically includes federal magistrates. See 18 U.S.C. § 3127(2)(A).

In contrast to the provisions of Title III regarding wiretaps, a pen register or trap and trace application does not require authorization from the Attorney General or her designee. The application need only identify the applicant and the investigating law enforcement agency and certify that "the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b)(2). The provision was not intended to require independent judicial review of relevance; rather, the reviewing court need only verify the completeness of the certification. See S.Rep. No. 541, 99th Cong., 2d Sess. 47 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3601. Moreover, the maximum prison term for violation of the pen register or trap and trace provisions is only one year, 18 U.S.C. § 3121(c), compared to the five-year prison term authorized for violation of the wiretap

provisions of Title III. 18 U.S.C. § 2511(4)(a).

### B. Discussion

■ Petitioner United States argues that magistrates have not been authorized to approve wiretapping orders, either by Title III or by the Magistrates Act, as first enacted in 1968, or by the 1976 amendment of § 636(b). Petitioner is aware, of course, that as far back as 1968, district courts could assign to a magistrate "such additional duties as are not inconsistent with the Constitution and laws of the United States," including assisting the judge in pretrial proceedings in criminal cases, and that since 1976 such assignment has been permissible "in any pretrial matter" (with specified exceptions not applicable here), "notwithstanding any provision of law to the contrary." Petitioner argues, however, that this general language does not allow the delegation to magistrates at issue here. Petitioner emphasizes that Title III, as initially passed in 1968, specifically gave the power to approve wiretap applications only to federal district judges, federal circuit judges and state judges empowered by state statute to issue eavesdropping orders and that the 1986 Privacy Act amended the definition section of Title III, 18 U.S.C. § 2510, in many respects but not with respect to the issue raised here.

These are strong arguments. The Privacy Act explicitly authorized magistrates to approve pen register and trap and trace methods of surveillance, but failed to amend Title III specifically to authorize magistrates to approve wiretapping orders. If Congress in 1986 had believed magistrates to be "judge[s] of competent jurisdiction," as the term is used in Title III, 18 U.S.C. § 2510(9), who are authorized to issue wiretapping orders, then the Privacy Act could have empowered magistrates to issue pen register orders with a simple reference back to § 2510(9). Instead, however, the 1986 Privacy Act specifies persons empowered to authorize pen register orders by reference to a separate "court of competent jurisdiction" section,

---

**5.** These devices are used to identify numbers dialed to or from a telephone, but do not allow

eavesdropping on conversations.

which, unlike § 2510(9), specifically includes magistrates. See 18 U.S.C. § 3127(2)(A).

■ In response, respondent argues primarily that the 1976 amendment to the Magistrates Act authorized a district judge to delegate "any pretrial matter"[6] (with specified exceptions not applicable here) to a magistrate, "notwithstanding any provision to the contrary." Respondent points to the House Report on the 1976 amendment, which stated that the language just quoted "is intended to overcome any problem which may be caused by the fact that scattered throughout the code are statutes which refer to 'the judge' or 'the court'" and that therefore "the permissible assignment of additional duties to a magistrate shall be governed by the revised section 636(b), 'notwithstanding any provision of law' referring to 'judge' or 'court'." H.R.Rep. No. 1609, 94th Cong., 2d sess. 9 (1976), reprinted in 1976 U.S.C.C.A.N. 6162, 6169. With regard to the 1986 Privacy Act, respondent claims that it specifically authorized magistrates to approve pen registers and not wiretapping because the 1986 Act, unlike the original Title III, post-dated both the Magistrates Act and the amendment of that Act in 1976. The Privacy Act's amendments in 1986 of the definitions in Title III did not authorize magistrates to issue wiretapping orders, respondent argues, because the 1976 Magistrates Act had already done so.

These are substantial arguments, particularly the former which relies on the 1976 amendment to the Magistrates Act. Yet, we are left with the strong conviction that Title III is sui generis and that any Congressional expansion of the list of those officers authorized to approve wiretaps would be specific rather than general and indirect. It must be remembered that Congress passed Title III in 1968 only after "a long battle between those who would have altogether prohibited wiretaps and the material obtained thereby and those who wanted to allow the government to use wiretap material in criminal prosecutions." *United States v. Gerena,* 869 F.2d 82, 84 (2d Cir.1989) (citing *National Broadcasting Co. v. United States Dept. of Justice,* 735 F.2d 51, 53 (2d Cir.1984)). Title III was not enacted simply to facilitate electronic surveillance by law enforcement agencies. To the contrary, this court has noted that because "Congress recognized that wiretapping could be highly intrusive of privacy," the statute placed strict limits on the use of wiretapping. *Gerena,* 869 F.2d at 84; see also *National Broadcasting Co.,* 735 F.2d at 53 (citing S.Rep. No. 1097, 90th Cong., 2d Sess. 67, 161–65, reprinted in 1968 U.S.C.C.A.N. 2112, 2154–56,.2222–27). Title III was intended to "properly protect the privacy of oral and wire communications, while providing a uniform basis for authorizing their interception in appropriate cases." *United States v. Bianco,* 998 F.2d 1112, 1120 (2d Cir.1993).

In view of this background, the interaction between Title III and the 1986 Privacy Act supports our view that magistrates have not been authorized to approve wiretap applications under Title III. It is significant that the Privacy Act changed the definition section of Title III in many respects, but did not alter § 2510(9), which grants the power to approve wiretaps only to federal Article III judges and state judges having general criminal jurisdiction and state statutory authorization. It is also significant that the 1986 Act specifically authorized magistrates only to approve.pen register and trap and trace monitoring, invasions of privacy far less intrusive than wiretapping. There is a sharp contrast between the stringent controls over wiretap orders (including the severity of punishment enforcing them) and the much less onerous conditions for obtaining pen register and trap and trace authorization. We believe

---

**6.** While we assume arguendo that the review of Title III wiretapping orders is a "pretrial matter" within the meaning of 28 U.S.C. § 636(b)(1)(A), it is at least arguable that this is not so because the review may occur long before any proceeding in court. This, of course, may also be true of applications for a search warrant, which magistrates are undoubtedly authorized to issue. See Fed.R.Crim.P. 41(a). But that power does not stem from the 1976 amendment of the Magistrates Act, upon which respondent so heavily relies. Rather, search warrant authority resided with United States commissioners, the predecessors of federal magistrates, since before the 1968 Magistrates Act. See S.Rep. No. 1097, 90th Cong., 2d sess. (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2179 (citing former 18 U.S.C. § 3041 (1964)).

that Congress in 1986 saw pen register and trap and trace monitoring, which magistrates may authorize, to be qualitatively different from wiretapping, which only an Article III federal judge or a state court judge of general criminal jurisdiction may authorize.

Respondent relies heavily on this court's decision in *United States v. Diaz*, 922 F.2d 998 (2d Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 2035, 114 L.Ed.2d 119 (1991), in support of the view that the order under attack here is valid. In that case, we interpreted the "notwithstanding" language in the 1976 amendment of the Magistrates Act as implicitly authorizing magistrates to empanel grand juries, even though the Jury Selection and Service Act, 28 U.S.C. § 1865(a), gives that authority only to district judges. *Diaz*, 922 F.2d at 1002. *Diaz*, however, did not involve the important privacy interests affected by Title III.

The purpose and legislative history of Title III suggest caution in allowing delegation of authority conferred by that statute. The Supreme Court relied on such a view of Title III in *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), a case strikingly similar to the case at hand. *Giordano* involved 18 U.S.C. § 2516(1), which then provided that "the Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application" for a wiretap order. The Court held that § 2516 did not allow the Attorney General to delegate the power to authorize applications to the Attorney General's Executive Assistant, even though the Attorney General was authorized by a different statute to delegate any of her functions to " 'any other officer, employee, or agency of the Department of Justice.' " *Giordano*, 416 U.S. at 513, 94 S.Ct. at 1826 (quoting 28 U.S.C. § 510).

Just as Title III empowers "a judge of competent jurisdiction" to review applications, 18 U.S.C. § 2518(1), it empowers the Attorney General to authorize applications.

See 18 U.S.C. § 2516(1). And, just as 28 U.S.C. § 636(b), the 1976 amendment of the Magistrates Act, allows district judges to delegate "any pretrial matter" and "additional duties," 28 U.S.C. § 510 allows the Attorney General to delegate any of her functions. The *Giordano* Court held, nonetheless, that even though Title III included no "precise language forbidding delegation ...[,] § 2516(1), *fairly read,* was intended to limit the power to authorize wiretap applications to the Attorney General himself and to any Assistant Attorney General he might designate." 416 U.S. at 514, 94 S.Ct. at 1826 (emphasis supplied).

The *Giordano* Court based its holding on the purpose and the legislative history of Title III, fairly read. The same approach also supports the view that Congress wanted to limit the power to review applications to specified judicial officers.[7] The purpose of Title III was to outlaw wiretapping except in certain situations, as indicated by the strict restrictions on the gathering and use of wiretap evidence. See id. at 514–16, 94 S.Ct. at 1826–27. Those statutory restrictions should be observed in the absence of specific Congressional direction to the contrary.

The present case also stands in contrast to our recent decision in *Austin v. Healey*, 5 F.3d 598 (2d Cir.1993), in which we approved a court rule automatically delegating extradition proceedings to magistrate judges. That case involved neither privacy issues nor judicial inference as to Congressional intent, for Congress has specifically stated that magistrates may hear extradition proceedings if " 'authorized so to do by a court of the United States.' " *Id.,* at 601 (quoting 18 U.S.C. § 3184). Furthermore, before the Magistrates Act, Congress had authorized extradition proceedings, unlike wiretap applications, to be heard by United States commissioners, id., at 603, so that the Magistrates Act in that respect merely codified prior practice.

7. Respondent has attempted to distinguish *Giordano* on the ground that the Attorney General's power to delegate authority under 28 U.S.C. § 510 predated Title III, while the Magistrates Act post-dated Title III. See *In re U.S. Attorney*, 784 F.Supp. at 1022. Thus, it could be argued that § 510 could not empower the Attorney General to delegate her Title III authority, because when § 510 was enacted, she had no Title III authority. *Giordano*, however, did not rely upon, or even mention, the timing of § 510. Rather, it relied entirely on a close examination of Title III.

It may also be argued that since magistrates have the authority to issue search warrants, which obviously intrude upon privacy interests, Congress must have intended in the 1976 amendments to the Magistrates Act to allow magistrates to approve wiretap applications. But here, too, United States commissioners were empowered to issue search warrants even before Title III was enacted, see supra n. 6, so that no such inference is justifiable. Indeed, the Senate Report on the legislation that became Title III specifically pointed out that the prior practice of commissioners with regard to such warrants had been "too permissive for the interception of wire or oral communications," and that the power to authorize electronic surveillance should be more limited. S.Rep. No. 1097, reprinted in 1968 U.S.C.C.A.N. 2112, 2179.

Our dissenting brother asserts that a wiretap is not "more intrusive on personal privacy" than a judicially-authorized search. We disagree. A wiretap may capture the intimate details of a person's life over an extended period of time without that person's knowledge. In contrast, a search pursuant to a warrant, which has long been a recognized tool of the prosecutor, occurs just once and, by its nature, puts the person searched on notice of the violation of privacy. A wiretap is like a continuous film of events in your home, secretly recorded over a period of weeks or months. A search is like a surprise snapshot of your home taken in your presence. The former is obviously a far greater invasion of privacy than the latter. The lengthy battle in the 1960's leading to enactment of Title III is proof enough that Congress considered the comparatively new technique of electronic eavesdropping to be far more intrusive than the familiar search pursuant to a warrant.

Finally, we do not doubt that the 1976 amendment of the Magistrates Act was intended, as respondent urges, to overcome a series of court decisions that had construed that Act narrowly to limit the "additional duties" that could be delegated to magistrates. H.R.Rep. No. 1609, reprinted in 1976 U.S.C.C.A.N. 6162, 6164–67, 6173. But one can search the House Report in vain for disapproval of a decision refusing to allow a magistrate to hear wiretap applications. Indeed, apparently no one thought that the power existed, since even respondent concedes that no district judge has ever delegated the review of a Title III application to a magistrate before.

In enacting the 1968 Magistrates Act, the 1976 amendment to that Act and the 1986 Privacy Act amendments to Title III, Congress had multiple opportunities to add magistrate judges specifically to the category in Title III of "judge of competent jurisdiction," but in each instance did not do so. We are aware of the growing burdens placed upon the district courts and appreciate the valuable assistance furnished to the judicial system by magistrate judges. But in enacting Title III, Congress showed great concern for protecting individual privacy against the vast potential for intrusion posed by wiretapping. In sum, we are unwilling, in the absence of explicit statutory direction, to expansively interpret Title III's definition of a "judge of competent jurisdiction," 18 U.S.C. § 2510(9), to include magistrate judges.

Mandamus granted.

CARDAMONE, Circuit Judge, dissenting:

The majority concludes that the Federal Magistrates Act does not authorize district courts to refer electronic eavesdropping applications, made under Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2521 (Title III), to a United States magistrate judge. In effect, the majority asks "why" should the magistrate judges have this authority. Were Congress asked this question, and it is that body's legislative purpose which purports to be our guide, its answer would be, I am persuaded, "why not?" While the issue presents a close question of statutory interpretation, clearly the statutory scheme, the genealogy of Title III amendments, and the legislative history of the Magistrates Act, Pub.L. No. 90–578, 82 Stat. 1107 (codified as amended at 18 U.S.C. §§ 3401–02; 28 U.S.C. §§ 631–39 (1988)), make plain the legislative aim to experiment in the broader use of magistrate judges in order to free Article III judges to perform their adjudicatory function. For reasons

stated in a moment, I therefore respectfully dissent.

### DISCUSSION

#### I

It is plain that Congress was deeply concerned about individual privacy rights as reflected in the debates leading up to the enactment of Title III in June 1968. Once Congress decided to authorize this intrusion through the use of a wiretap, the issue of privacy was resolved and the only question that remained was which judicial officers would have the authority to order a wiretap. It is our differing views on the answer to that question that prompts this dissent.

The statute, 18 U.S.C. § 2518(1), requires all wiretap applications to be submitted in writing to a "judge of competent jurisdiction," defined as: "(a) a judge of a United States district court or a United States court of appeals; and (b) a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter [wiretap] orders." 18 U.S.C. § 2510(9).

At the time § 2510(9) was drafted and enacted, Congress could not have included magistrates in the definition because magistrates did not then exist. Commissioners, who were not required to be lawyers, were their ostensible equivalent, and Congress did not deem commissioners capable of judiciously reviewing wiretap applications. *See* S.Rep. No. 1097, 90th Cong.2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2179. In fact, Congress did not believe commissioners were competent in the duties they were authorized to perform, such as review of applications for and authorization of search and arrest warrants. *See* H.R.Rep. No. 1629, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 4252, 4255–56.

In response to this perceived inadequacy, four months after the passage of Title III, Congress enacted in October 1968 the Federal Magistrates Act. With the creation of the office of the United States magistrate, Congress abolished the office of commissioner. Magistrates were vested with all the authority previously held by commissioners, along with greatly expanded duties designed to "increase[ ] the overall efficiency of the Federal judiciary, while at the same time providing a higher standard of justice at the point where many individuals first come into contact with the courts." H.R.Rep. No. 1629, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 4252, 4257.

To address the deficiencies of the commissioners, Congress required, *inter alia,* magistrates to be members of the bar wherever possible. *See* 28 U.S.C. § 631(b)(1). This was prompted, in part, to insure "both the accused and the legal system of an independent determination of the question of probable cause." *Id.* at 4256. Congress obviously could have modified § 2510(9) and expressly extended to magistrates the authority to authorize Title III wiretaps. Perhaps it was thought unnecessary in light of the Magistrates Act itself. No time need be spent speculating on this because in 1976 Congress made clear how it desired magistrates to be used in our judicial system.

#### II

As the legislative history of the 1976 amendments to the Magistrates Act demonstrates, Congress was troubled by a series of court decisions that construed the Magistrate's Act narrowly, stifling the greater use of magistrates by the district courts. *See* H.R.Rep. No. 1609, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162, 6166. The amendments accordingly reorganized the Magistrates Act in an attempt to clarify and further define the additional duties that may be assigned a magistrate. *See Gomez v. United States,* 490 U.S. 858, 867, 109 S.Ct. 2237, 2243, 104 L.Ed.2d 923 (1989). The revised § 636(b) reads, in relevant part, as follows:

(b)(1) Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate to *hear and determine any pretrial matter* pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to

940

permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

. . . . .

(3) A magistrate may be assigned *such additional duties* as are not inconsistent with the Constitution and laws of the United States. (Emphasis added).

For purposes of the instant appeal, the two underlined clauses of § 636(b)—the "pretrial matters" and the "additional duties" clause—are in my view the source of authority permitting a magistrate judge to review a wiretap application and authorize its issuance. Of equal importance is the statute's lead-in sentence, that reads: "Notwithstanding any provision of law to the contrary—." Its significance will be addressed first.

This sentence modifies the pretrial matters and additional duties clauses, and was included in order to resolve issues like that presented on this appeal, that is, whether a district judge may validly refer to a magistrate judge a task statutorily assigned to the district judge. As both the Senate and House Judiciary Committees explained:

> The initial sentence of the revised section uses the phrase "notwithstanding any provision of law to the contrary—". This language is intended to overcome any problem which may be caused by the fact that scattered throughout the code are statutes which refer to "the judge" or "the court." It is not feasible for the Congress to change each of these terms to read "the judge or a magistrate." It is, therefore, intended that the permissible assignment of additional duties to a magistrate shall be governed by the revised section 636(b), "notwithstanding any provision of law" referring to "judge" or "court."

S.Rep. No. 625, 94th Cong., 2d Sess. 7 (1976); H.R.Rep. No. 1609, 94th Cong., 2d Sess. 9 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162, 6169. Given this plain expression of legislative purpose, the language of § 2510(9) is modified by § 636(b) so as to allow a district judge to refer a Title III application to a magistrate judge, provided the referral is encompassed by a specific authorization in the remainder of § 636(b).

Authority for such reference, it seems to me, falls within the orbit of either the pretrial matters clause or the additional duties clause because overall "[t]he Act is designed to relieve the district courts of certain subordinate duties that often distract district courts from more important matters." *Peretz v. United States,* —— U.S. ——, 111 S.Ct. 2661, 2668, 115 L.Ed.2d 808 (1991); *see also* H.R.Rep. No. 94–1609, 94th Cong., 2d Sess. 7 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162, 6167 (magistrate is to "assist the district judge in a variety of pretrial and preliminary matters thereby facilitating the ultimate and final exercise of the adjudicatory function at the trial of the case"); S.Rep. No. 92–1065, 92nd Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3350, 3351 (magistrates "render valuable assistance to the judges of the district courts, thereby freeing the time of those judges for the actual trial of cases"); H.R.Rep. No. 1629, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 4252, 4255 (purpose of Act is "to cull from the ever-growing workload of the U.S. district courts matters that are more desirably performed by a lower tier of judicial officers"). The answer to the question now raised hinges therefore on whether the referral is a pretrial matter.

## A. *Pretrial Matters*

Under the pretrial matters clause, a magistrate judge may be assigned to "hear and determine any pretrial matter." 18 U.S.C. § 636(b)(1)(A). The district court retains the supervisory power to review the magistrate's determination upon a showing that it "is clearly erroneous or contrary to law." *Id.; see also Gomez,* 490 U.S. at 868, 109 S.Ct. at 2244. The amendment to the pretrial matters clause aimed to "clarify the broad authority to refer 'any pretrial matter.'" H.R.Rep. No. 1609, 94th Cong., 2d Sess. 9 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162, 6169. Only eight categories of dispositive pretrial motions, which might otherwise fall within the broad range of pretrial matters that could be referred, were excepted. *See* 18 U.S.C. § 636(b)(1)(A).

Referral of a Title III wiretap application is not one of the enumerated exceptions. An ancient maxim of statutory interpretation seems particularly apt in such a circumstance: *"Inclusio unius est exclusio alterius"* (The inclusion of one is the exclusion of another). Thus, it logically follows that since the eight exceptions to the pretrial matters clause did not include Title III wiretap referrals, it was not one of those categories of cases excepted from the broad range of cases that could properly be referred. *See United States v. Diaz,* 922 F.2d 998, 1002 (2d Cir. 1990). Absent an affirmative reason to believe the 94th Congress had a different purpose, we should not judicially repeal the authorization to refer effectuated by Congress in 1968 and in 1976.

It is of more than slight significance that arrest warrants and search warrants were among those criminal pretrial matters enumerated in the Committee Report that set forth the types of pretrial matters included within this provision. *See Gomez,* 490 U.S. at 868, n. 16, 109 S.Ct. at 2244 n. 16; H.R.Rep. No. 1609, 94th Cong., 2d Sess. 7, 9 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162, 6167, 6169. The *ex parte* nature of such individual applications is wholly analogous to the authorization for a wiretap. The notion that a wiretap is somehow more intrusive on personal privacy than an arrest or search warrant, and therefore only to be authorized by an Article III judge, blinks reality.

Concededly, those subject to an arrest or search warrant have notice at the time the intrusion occurs, while the wiretap is secret and without notice. But the knowledge imparted comes about because of the nature of the intrusion, not because there is a view that it constitutes a greater or lesser invasion of an individual's right to privacy than does a wiretap. It might well be said that the execution of an arrest warrant not only deprives the individual of his or her right to privacy, it also denies to the individual the fundamental right to liberty, making that privacy intrusion greater than that imposed by a wiretap.

Yet, distinctions in Fourth Amendment jurisprudence based on differing levels of intrusiveness are disfavored by the Supreme Court. *See Arizona v. Hicks,* 480 U.S. 321, 325, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987) (finding that "[a] search is a search," regardless of its level of intrusiveness). This is because parsing out invasions of privacy tramples on the bright line the Court has attempted to establish in Fourth Amendment law. Hence, privacy cannot serve as a reason to deny a reference to a magistrate judge.

Moreover, and perhaps most importantly, applications for arrest and search warrants regularly call on magistrate judges to make the same probable cause determination that is at the heart of all Title III application decisions. *See* 18 U.S.C. § 2518(3)(a)(b)–(c). Affording district judges the right to delegate this authority to magistrate judges does not therefore construe the pretrial matters clause so as "to include responsibilities of far greater importance than the specified duties assigned to magistrates." *Peretz,* —— U.S. at ——, 111 S.Ct. at 2667; *see also Gomez,* 490 U.S. at 864, 109 S.Ct. at 2241 ("Any additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties."). As such, there is no principled reason to infer that a wiretap application should not fall within the scope of the pretrial matters clause, while an arrest and search warrant should.

Congress, as noted, has ruled that arrest and search warrants are pretrial matters within the meaning of the clause. *See Gomez,* 490 U.S. at 868, n. 16, 109 S.Ct. at 2244 n. 16; H.R.Rep. No. 1609, 94th Cong., 2d Sess. 7, 9 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162, 6167, 6169. The comparative analysis is not destroyed simply because these matters are also embraced by § 636(a)(1), which authorizes magistrates to assume all the duties previously held by commissioners. It bears repeating that commissioners were roundly criticized for their handling of those matters, which in itself was a major impetus for the creation of magistrates in the first place.

### B. *Additional Duties*

Neither the Magistrates Act nor the cases interpreting the Act are altogether clear on the scope of the pretrial matters clause or

the delineation between the pretrial matters and the additional duties clauses. Notwithstanding this murkiness, if the assignment of a Title III application is not a pretrial matter, then it must fall within the catch-all "additional duties" clause.

The government suggests that because no other judge has ever referred an application to a magistrate judge, Judge Korman should be mandamused not to refer such because in so doing he acts beyond his power. This contention, here upheld by my respected colleagues, thwarts Congress' purpose when it included the additional duties clause in the 1976 amendments to the Magistrates Act. Congress sought to encourage experimentation so as to relieve district judges of time-consuming matters that do not require an Article III judge, and that distract such judges from the trying of cases. As the House Judiciary Committee explained:

> This subsection enables the district courts to continue innovative experimentations in the use of this judicial officer. At the same time, placing this authorization in an entirely separate subsection emphasizes that it is not restricted in any way by any other specific grant of authority to magistrates.

> Under this subsection, the district courts would remain free to experiment in the assignment of other duties to magistrates which may not necessarily be included in the broad category of "pretrial matters".

> . . . . .

> If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties, and a consequent benefit to both efficiency and the quality of justice in the Federal courts.

H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162, 6172.

Judge Korman describes the burden review of Title III applications places on already overworked district courts.

Specifically, applications for Title III orders are accompanied by long and prolix affidavits. Review of these applications is often time consuming and the judicial officer's task does not end with his or her signature on the order. After the wire interception is in place, there are periodic reports that require the judicial officer to monitor its progress. Moreover, where relevant conversations are seized, the judicial officer will usually be faced with equally lengthy and prolix renewal applications.

*In re U.S. Attorney,* 784 F.Supp. 1019, 1027 (E.D.N.Y.1992). Refusing to allow referral of these applications to magistrate judges who are intended to be an extra set of eyes, ears and hands and who already regularly perform similar tasks—many of which require the same determination of whether or not probable cause exists—only undermines the common goal of ensuring thorough monitoring of Title III applications.

The Supreme Court has stamped its imprimatur on a broad interpretation of the additional duties clause consistent with Congress' plan.

> The generality of the category of "additional duties" indicates that Congress intended to give federal judges significant leeway to experiment with possible improvements in the efficiency of the judicial process that had not already been tried or even foreseen. If Congress had intended strictly to limit these additional duties to functions considered in committee hearings or debates, presumably it would have included in the statute a bill of particulars rather than a broad residuary clause.

*Peretz,* —— U.S. at ——, 111 S.Ct. at 2667. The only limitations placed on this method of testing for improvements in judicial efficiency was expressed by the Court in *Peretz.* First, just as with a supplemental duty under the pretrial matters clause, the delegation of another duty pursuant to the "additional duties" clause cannot "include responsibilities of far greater importance than the specified duties assigned to magistrates." *Peretz,* —— U.S. at ——, 111 S.Ct. at 2667. For the reasons discussed earlier, this limitation is not implicated.

Second, the delegated duty cannot be "inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). This language cannot preclude a district court's referral of a Title III application to a magistrate simply because of the language of 18 U.S.C. § 2510(9). Some affirmative indication of congressional purpose to prohibit use of a magistrate is required or some conflict with the Constitution must be shown. Any other reading of the statute would render the lead-in language of § 636(b), "notwithstanding any provision of law," superfluous, contravening the norms of statutory construction. *See Freytag v. Commissioner,* —— U.S. ——, ——, 111 S.Ct. 2631, 2638, 115 L.Ed.2d 764 (1991); *Pennsylvania Public Welfare Dept. v. Davenport,* 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990). For example, as the district court in the instant case points out, a jury verdict must under Fed.R.Crim.P. 31 be returned to "a judge." But the legislative history of § 636(b) teaches that the additional duties clause permits magistrates to take a jury verdict "where the trial judge is unavailable." *See In re U.S. Attorney,* 784 F.Supp. at 1026, n. 10. Hence, the word "judge" may not be read consistent with Congress' scheme to exclude "magistrate judge," absent some affirmative indication from the legislature.

Further, the interplay of the Supreme Court's opinions in *Peretz* (allowing district courts to assign jury *voir dire* in a criminal case to magistrates when the parties consent) and *Gomez* (not allowing the foregoing where the parties did not consent) is particularly instructive respecting the scope of the additional duties clause. In *Peretz,* the Court said its holding in *Gomez* was predicated on concern that a magistrate's conducting of jury *voir dire* without a defendant's consent involved the potential deprivation of a significant constitutional right or privilege. *See Peretz,* —— U.S. at ——, 111 S.Ct. at 2666.

In the instant case, there are no constitutional concerns. The Fourth Amendment requires that the probable cause determination be made by a "neutral and detached magistrate." *See Coolidge v. New Hampshire,* 403 U.S. 443, 453, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564 (1971). Obviously, the Fourth Amendment is not violated by the delegation of a wiretap application to a magistrate judge. Because the Court found no constitutional impairment in *Peretz,* it "therefore attach[ed] far less importance . . . to the fact that Congress did not focus on jury selection as a possible additional duty for magistrates." —— U.S. at ——, 111 S.Ct. at 2667. As in *Peretz,* the absence here of any constitutional difficulty obviates the need to find unambiguous evidence of Congress' design to include Title III applications among the additional duties a district court can refer to a magistrate. *See id.*

### III

The government urges that analysis of Congress' intent in this case be guided by the Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, 100 Stat. 1848 (codified as amended at 18 U.S.C. §§ 3121–3127 (1988)). This argument fails for several reasons.

To begin with, courts have an unflagging duty to read the laws of the United States in accord with what judges perceive is Congress' scheme, not as judges might prefer. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 447, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987); *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). Thus, we must be guided by what the 94th Congress had in mind when it enacted the 1976 amendments to the Magistrates Act and, to a lesser extent, the plan the 90th Congress had when it enacted Title III and, later in that same session, the original Magistrates Act. To say that the 94th Congress' intent was that Title III applications should not be referred to magistrate judges pursuant to the Magistrates Act because the 99th Congress did not amend 18 U.S.C. §§ 2518(1) and 2510(9) is a weak reed to rely on when construing such comprehensive statutes. That is to say, "it is well settled that 'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *Russello v. United States,* 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983) (quoting *Jefferson County Pharma-*

*ceutical Ass'n v. Abbot Labs.,* 460 U.S. 150, 165 n. 27, 103 S.Ct. 1011, 1021 n. 27, 74 L.Ed.2d 882 (1983)).

Further, even assuming *arguendo* that we should in some sense be guided by what Congress did in 1986, its actions can reasonably be read so as not to conflict with the conclusion that Title III applications can be referred to a magistrate. The 1976 amendments and its inclusion of the "notwithstanding any law to the contrary" language was reflective in effect. Congress modified all those provisions that referred to "judge" or "court," as it made perfectly plain. Included within that sweep was § 2510(9), as it defined judge of competent jurisdiction in all the *then-existing* provisions of Title III.

Next, when Congress later included the pen register provisions in 1981, it could not simply have said applications must be submitted to a "judge of competent jurisdiction" and referenced § 2510(9), as the government argues. Doing so would have rendered the pen register provisions ambiguous. The reflective 1976 amendments could not logically be read to modify later-enacted provisions of Title III. As a consequence, a new term had to be used with a different definitional section, which included magistrate. Insofar as § 2510(9) pertained to Title III wiretap applications, there was therefore no need to change or amend it; Congress had already changed it in 1976.

In disputing this proposition the government's reliance on *Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), is misplaced. Because the Attorney General's power to delegate authority under 28 U.S.C. § 510 predated Title III, logically § 510 could not modify the unambiguous language of Title III so as to allow the Attorney General to delegate the power to authorize wiretap applications. In analyzing this issue the Supreme Court would focus on Title III because as the later-enacted statute, it was controlling. In contrast, the expanding provisions in both the 1976 amendments and the original Magistrates Act succeed Title III, and as such they control. Hence, the provisions of the 1981 Electronic Communications Act really shed no new light on the controlling statutes. It violates a cardinal rule of construction to view the pen register act of 1986 as repealing the Magistrates Act by implication.

Finally, the government declares that the contrast between the stringent controls placed on wiretap orders versus the much less onerous requirements for pen register authorizations indicates that Congress thought wiretap orders required the approval of a district judge. It is equally plausible to believe Congress recognized that the use of a pen register—compared to a wiretap—did not implicate the Fourth Amendment. *See Smith v. Maryland,* 442 U.S. 735, 745–46, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

## CONCLUSION

For the reasons stated, I vote to deny the petition for a writ of mandamus.